### AMERICAN STRAWBOARD CO. v. HALDEMAN PAPER CO.

#### (Circuit Court of Appeals, Sixth Circuit. December 7, 1897.)

#### No. 499.

**1. LEASE—COVENANTS—VALIDITY.**

A covenant in a lease of a paper mill, with privilege of purchase, that the lessee will not during the term, nor for 20 years in case of purchase, make on the premises certain classes of paper, which the lessor is engaged in making elsewhere, is valid, and binds assignees, although they are not mentioned.

**2. SAME—ENFORCEMENT.**

Whether, in case of purchase, such covenant, when inserted in the deed, would technically run with the land, or not, it is enforceable in equity against all owners with notice, actual or constructive.

**3. VENDOR AND PURCHASER—CONTRACT—RESTRICTING USE OF PREMISES.**

An assignee electing to purchase is bound to accept a deed containing the restrictive covenant. Readiness to perform on his part is lacking, and he cannot recover for a breach of the covenant to convey, when it appears that he persisted in demanding a deed without restriction of use.

**4. SAME—BREACH OF COVENANT TO CONVEY.**

Although the restrictive clause in the deed tendered by the lessor be improperly drawn, this is not a breach of the covenant to convey; and no tender of a proper deed is necessary for defense, when the demands and declarations of the lessee show that such tender would be vain.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Action by the Haldeman Paper Company against the American Strawboard Company for damages for breach of a contract to convey a mill property. There was judgment for plaintiff, and defendant brings error.

By an indenture of lease dated June 27, 1891, the American Strawboard Company, a corporation largely engaged in the manufacture of strawboard and other wood pulp products, and owning and operating a number of strawboard mills, demised to George N. Friend. his heirs and assigns, one of its manufacturing plants known as the Rockdale Mills, for a term of three years, the consent of the lessor being necessary to any assignment of the lease. There was also a provision giving to the lessee an option of purchase to be exercised within one year from October 1, 1891, at the price of $25,000, one-fourth in cash and remainder in equal installments in one, two, and three years, with interest, the deferred payments to be secured by a mortgage and insurance on the premises. Should this option be exercised, the lessor covenanted to convey the property by "good and sufficient warranty deed." Among other covenants by the lessee there was one in these words: "Said second party further covenants and agrees with said first party, its successors and assigns, as part of the consideration of this agreement, and as an inducement to said first party to enter into this agreement, that he shall not and will not, during the term created by this lease, or any extension thereof, or in case of the purchase of said premises as above provided within the period of twenty years from date hereof (except in the capacity of officer, agent, stockholder, or employé of said first party), directly or indirectly, as employer, employé, agent, officer, stockholder, or

otherwise, manufacture on said premises, or engage in or be interested in the manufacture on said premises, of strawboard, straw lumber, sheet strawboard, rolled strawboard, wood-pulp board, pulp-lined board, straw wrapping paper; and the sum of $20,000, to be recovered by and paid to the said American Strawboard Company, its successors or assigns, is hereby fixed and agreed upon as and for liquidated damages, to the payment of which said sum of $20,000 well and truly to be made to the said American Strawboard Company, its successors or assigns, the undersigned binds himself, his heirs, executors, and administrators, firmly by this contract, in case of any violation of this paragraph of this contract, by him. It is further agreed that, in case of the violation of this paragraph of this agreement, as a further remedy said first party may, at its option, avoid this lease, and enter into possession of the demised premises, and also restrain by injunction the violation of this paragraph of this agreement."

On the 6th of July, 1892, this lease was assigned by Friend to the appellee, the Haldeman Paper Company, a corporation engaged in the manufacture of paper. This assignment was in writing, and indorsed upon the original lease, and was as follows: "Be it known that I, the undersigned, George N. Friend, have this day, for value received, sold, assigned, and transferred all my right, title, and interest of every kind and nature in and to the foregoing lease to the Haldeman Paper Company, of Lockland, Ohio, and do hereby sell, assign, and transfer to said the Haldeman Paper Company all my said right, title, and interest in and to said lease, the same to have, use, and enjoy the same as I might or could do." The American Strawboard Company consented to this assignment, and granted an extension of the option of purchase in these words: "We hereby consent to the transfer of this lease and the option of purchase to the Haldeman Paper Company, of Lockland, Ohio, and agree to extend said option of purchase to January 1, 1893, granting and giving to them, the Haldeman Paper Company, and their assigns, for the consideration of $1 to us in hand paid, all the right and privileges originally given by us to George N. Friend, under this lease. In witness whereof the American Strawboard Company, by its vice president and secretary, have hereunto set their hands and seals in duplicate this 7th day of July, A. D. 1892."

On December 31, 1892, the Haldeman Paper Company exercised its option of purchase, and paid the cash installment of the purchase money, and offered to execute its notes, and secure same by mortgage and insurance when the property should be conveyed. A draft of a deed was thereupon prepared by the American Strawboard Company, and submitted to the purchaser for approval. This deed contained a covenant by the grantee with the grantor, its successors or assigns, that the premises should not be used by the grantee, its successors or assigns, for 20 years from the date of the deed in the manufacture of strawboard or any other straw products mentioned in the demise to Friend, and a condition that if this covenant was broken the deed should be null and void, and the title revert to the grantor, its successors or assigns, with a right of re-entry. After this form of deed had been submitted to the purchaser for its approval there ensued a lengthy correspondence between the parties which would but incumber this opinion to fully set out. It is sufficient to say that the position taken by the purchaser was that it was entitled to receive a clear warranty deed containing no covenant whatever restricting the use of the premises, while, on the other hand, the American Strawboard Company strenuously insisted upon a deed containing a covenant against the use of the premises for the purposes prohibited by the lease. Such a deed as the Haldeman Paper Company demanded was refused, but a deed in form such as that submitted for approval was the only deed actually tendered by the American Strawboard Company. With this correspondence all effort at an amicable understanding came to an end, and the Haldeman Paper Company commenced this action at law to recover damages for a breach of the covenant "to convey by a good and sufficient warranty deed"; the plaintiff averring that it had performed all and singular the things required of it to be done by the terms of the lease in pursuance of its option of purchase, and that the defendant had refused, though often requested, to deliver to it a good and sufficient warranty deed as provided for in said lease, and had wholly refused to perform any of the conditions and covenants of the lease touching said option of purchase and the

conveyance of said premises in fee simple to the plaintiff. Damages were laid at the sum of $50,000. There was a jury, and verdict for the plaintiff, and judgment thereon for $16,206.25.

Judson Harmon and S. S. Wheeler, for plaintiff in error.

Robert Ramsey, for defendant in error.

Before HARLAN, Circuit Justice, and TAFT and LURTON, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

At the conclusion of all the evidence the jury was instructed to find for the plaintiff, and to assess its damages upon the proofs, under the further directions of the court then given. Several requests made by the defendant below were refused, including one to return a verdict in its favor.

The error assigned upon the instruction to find for the defendant in error involves the substance of the whole case. This instruction has been defended upon two distinct grounds: First, that the covenant of the vendor to convey by warranty deed was broken by the tender to the vendee of a form of deed which enlarged the term during which a particular use was prohibited by the provision in the lease, and by the insertion of a condition terminating the estate of the grantee upon breach of that covenant, irrespective of all questions of the right of the vendor to insert therein a covenant restricting the use in the particular and for the term, and under the penalty provided in the lease and option; second, that the purchaser was entitled to demand and receive a clear warranty deed containing no restrictions upon the use of the property whatever, and that the refusal of the vendor to make and tender such a deed constituted a breach of the covenant to convey by warranty deed.

Assuming, for the present, that defendant in error, as assignee of Friend, was affected and bound by the covenant in respect to a restricted use of the premises, and that the vendor had a right to insert that covenant in its deed, it must then be admitted that the deed which the plaintiff in error proposed to execute was not in accordance with the agreement. The form of deed submitted not only enlarged the prohibition of the covenant of the lessee in respect to time, but included a condition terminating the estate of the grantee upon breach of the covenant. The prohibition of a particular use was limited by the lease, in case of a sale, to a term of 20 years from the date of the lease, and also provided that $20,000 should be paid as liquidated damages for a violation of that prohibition. It was therefore not admissible to extend the restriction to a term of 20 years from date of the deed, nor to alter the agreement as to the consequences in event the covenant was breached. But the defendant in error did not base its objection to this deed upon these matters, but distinctly took the ground, in the correspondence which ensued, that it was not obliged to accept a deed which contained any restriction whatever upon the use of the premises, and declared its purpose to refuse any deed which contained any such covenant.

The suggestion that the objection was limited to the condition terminating the estate upon a breach of the covenant finds no support. The letter of February 20, 1893, from Mr. Baird, representing the American Strawboard Company, in reply to the letter of Mr. Richardson, representing the Haldeman Paper Company, of February 17, 1893, specifically inquired whether the objection was to the "conditional clause in the deed."    To this the Haldeman Company replied under date of February 22, 1893:

"You are right in your understanding that we object to the conditional clause in the deed, for the reason it is not the kind of a deed specified in the lease. All conditions, restrictions, and covenants concerning same are in the lease itself, and there is no reason why they should be put in the deed when the clause of the lease especially provides that the American Strawboard Company will convey the property with a good and sufficient warranty deed. We are unwilling to accept any other kind of a deed than a deed of general warranty, as provided for in the terms of the lease. If you will have this deed prepared and executed, and advise when you are ready, we will be prepared to meet you wherever you desire to close up this purchase. We remain," etc.

The clear meaning of this language is that the objection was not to the form in which this covenant had been inserted, or to its insertion as a condition rather than as a mere covenant, but to the inclusion of any restriction upon the use, whether by way of condition or covenant.

Several other letters subsequently passed between the parties, but this demand for a clear warranty deed, and this declaration of unwillingness to accept any deed which contained any restrictions, conditions, or covenants, was never modified.

The last communication addressed by the American Strawboard Company, relating to the form of deed, bears date April 21, 1893, and was in reply to a letter from the attorneys representing the Haldeman Paper Company, in which they had again referred to the presence of "a condition" not justified by the option.    In reply that company, among other things, said:

"That deed contains a stipulation and condition that strawboard shall not be manufactured on the premises conveyed for the period of thirty years. This is in exact accordance with the option as we construe it, and as we understand it was understood both by the American Strawboard and the Haldeman Paper Company. The American Strawboard Company has prepared and executed a deed containing that condition, and has offered to deliver it to the Haldeman Paper Company. The Haldeman Paper Company has refused to accept the deed as prepared, advising me that they base their refusal upon your advice. I am ready at any time to close this matter up, if you will accept the deed as drawn, or a deed containing a stipulation that strawboard, straw lumber, sheet strawboard, roll strawboard, wood-pulp board, pulp-line board, straw wrapping paper shall not be manufactured on the premises conveyed for the period of thirty years from the date of conveyance. I am instructed to say to you that the American Strawboard Company will not make a conveyance which does not contain that stipulation. We are after the substance, and do not care as to the form in which the idea may be expressed. The American Strawboard Company would not have given an option on that plant for any such price if it had been proposed to manufacture strawboard in it. If your clients do not intend to manufacture strawboard at this plant, I cannot see why they should object to the condition being inserted as I have drawn it."

This correspondence, taken as a whole, makes it clear that the Haldeman Paper Company was firm in its determination to receive no deed which contained the stipulation of the option of purchase re-

stricting the use of the property. It is true that in the letter last referred to the term of this covenant is mentioned as "thirty years from date of conveyance," but this was a manifest mistake of the draftsman of the letter. No attention was called to this by the Haldeman Company, and their refusal to go on with the contract was not based upon any enlargement of the term of prohibition, but upon the broader ground, that the covenant of the option of purchase should have no place in the warranty deed which was demanded. In view of this uncompromising attitude, as to the legal rights of the Haldeman Company, it would have been an idle ceremony to have offered a deed embodying any restriction upon the use of the property whatever.

This closed the negotiations, and the Haldeman Company insisted below, and insists here, that, irrespective of the right of the American Strawboard Company to incorporate in the deed a covenant in the language of the option, the failure of that company to tender such a deed constituted a breach of the covenant "to convey by a good and sufficient warranty deed."

To this we cannot agree. Two things are essential to a recovery by the defendant in error in this action: First, that it shall aver and show that it had performed all it was bound to do precedent to its demand for a deed, and that it was willing and ready to enter into all such covenants and do all other things required by the contract of sale; and, second, that the defendant has failed and refused to convey by such a deed as it was obligated to execute. The correspondence which ensued after the owner had submitted a form of deed demonstrates that the purchaser was not ready and willing to accept any deed which included the covenant touching the use of the property, and advised the vendor, in advance of any tender of a proper deed, that it would accept nothing but a clear warranty deed, free from all covenants restricting the use of the premises. An action for a breach of contract will not lie when nonperformance by the defendant has been caused by the plaintiff. "It is a sound principle that one who prevents a thing being done shall not avail himself of the nonperformance he has occasioned." Dodsworth v. Iron Works, 31 U. S. App. 292–300, 13 C. C. A. 555, and 66 Fed. 486.

If the defendant in error was obliged to accept a deed restricting its use of this property as owner, to the extent provided by the option of purchase, this attitude of unwillingness to accept such a deed as the seller had a right to make saps the very foundation of its action for a breach of covenant. The plaintiff in such a suit must not only aver, but prove, a readiness and willingness to enter into all such covenants and agreements as it was bound to do by the contract. If, therefore, all consideration of the form in which a covenant restricting the use should be inserted in the deed was prevented by the unequivocal refusal to accept any deed which included such a covenant in any form, the plaintiff cannot rely upon the failure of the seller to tender a deed in proper form. A difference might apply if the vendor was endeavoring to enforce this contract without showing the tender of a proper deed. Lumber Co. v. Alley, 43 U. S. App. 169–177, 19 C. C. A. 599, and 73 Fed. 603; Smoots' Case, 15 Wall. 36.

This case must therefore turn upon the question as to whether the defendant in error was bound to accept a deed which included the covenant found in the lease to Friend, its assignor.

The covenant in question is not one in general restraint of trade, and involves no such business as directly concerns the public welfare. The restraint imposed is partial, and not general, and manifestly is no larger than necessary for the protection of the owner and lessor against a particular use of the property, for a limited time, in a business which directly competed with the business conducted by it. Every such contract must be governed by its own circumstances. If the restraint be partial and reasonable, it is a valid engagement. Navigation Co. v. Winsor, 20 Wall. 64; Gibbs v. Gas Co., 130 U. S. 396–409, 9 Sup. Ct. 553; Stines v. Dorman, 25 Ohio St. 580–583.

Waiving the question as to whether such a covenant in a deed conveying the fee would constitute a covenant technically running with the land, it is clear that this stipulation or qualification in a lease is not collateral to the land and personal to Friend. It was manifestly not intended to restrain Friend from engaging in the prohibited line of manufacture generally, for he is left free to make strawboard anywhere and everywhere, save only upon these leased premises. It is obviously a stipulation intended to prevent the leased mill from being used during the lease in a particular business. The restriction is therefore not upon Friend personally, but upon the property. Whether this qualification of the lessees' interest be regarded as inserted for the particular benefit of the lessors' reversion in that particular property, or for the benefit of other property owned by the lessors, or for the general benefit of a business conducted elsewhere, it is a covenant which concerns or relates to the land, and, as such, follows the leasehold estate into the hands of an assignee. The mode of enjoying the land is affected, and this determines the assignable character of the covenant.

That "assigns" is not used in the words of this covenant is not of moment. It is well settled by the weight of authority that a covenant by a lessee against the use of the premises in a particular way, or in a particular trade, attaches to the subject of the demise, and runs with the leasehold, whether the assignee be named or not. The covenant concerned "a thing in esse," and related to the use of the demised premises, and is therefore not collateral to the land. It did not relate to something which was not "in being at the time," and clearly falls within the first and sixth resolutions of Spencer's Case, 5 Coke, 16; Vyvyan v. Arthur, 1 Barn. & C. 410; Tatem v. Chaplin, 2 H. Bl. 133; Fleetwood v. Hull, 23 Q. B. Div. 35; Tayl. Landl. & T. §§ 260–262, 416; Norman v. Wells, 17 Wend. 136; Catt v. Tourle, 4 Ch. App. 657; Clegg v. Hands, 44 Ch. Div. 503–518; Tulk v. Moxhay, 2 Phil. Ch. 774; White v. Hotel Co. [1897] 1 Ch. 767; Railway Co. v. Bosworth, 46 Ohio St. 81, 18 N. E. 533.

The covenant in question is distinguished from Mayor, etc., of Congleton v. Pattison, 10 East, 130, where the lessees of a silk mill covenanted to employ only persons residing in the parish. That covenant was held to be personal, because it did not affect the nature, quality, or value of the thing demised or the mode of enjoying it, and could only

collaterally affect the lessors as owners of other lands in the parish by a possibility of increasing the poor's rate upon them through the bringing into the parish of laborers who might become a public charge. This was held to be so remote a benefit as to constitute the covenant one collateral to the land demised. The general principle is that if the covenant relate to the mode of enjoying the leased lands, whether for the benefit of the reversion, or of other lands of the lessor, or of a business conducted elsewhere by him, it is a covenant which, in the language of the old cases, "touches" or "concerns" the demised premises.

In Vyvyan v. Arthur, cited above, a lessee covenanted that during the term the produce of the demised land should be ground at the mill of the lessor situated on his other lands. The covenant was held to be one touching the land, the benefit of which passed to an assignee of the reversion in the leased land, who was also, as heir of the lessor, seised in fee of the lessor's mill.

In Norman v. Wells, 17 Wend. 136, there was involved a covenant in a lease of a mill site on a particular stream, whereby the lessor covenanted that he would not establish any other mill on the same stream during the term on his other lands, or let any site on the same stream as a site for a mahogany mill. This was held to be a covenant running with the land demised, and an action by an assignee of the lease for a breach of the covenant by the establishment of a rival mill on the same stream, under a lease by the lessor without any restriction, was maintained.

In Tatem v. Chaplin, 2 H. Bl. 133, a covenant in the lease that the lessee, his executors and administrators, should constantly reside on the land, and fixing a penalty of five pounds for every month he or they should not so reside on the demised premises, was held to be a covenant annexed to the leasehold estate, and appurtenant to the thing devised, and binding on the assignee of the lease, though he was not named therein.

In Fleetwood v. Hull, supra, a covenant in a lease of a public house that the lessee would manage the business of an inn or tavern in such proper manner as to afford no ground whatever whereby the license should or might be suspended or revoked, was held to be one running with the land, and enforceable by the assignee of the reversion.

Clegg v. Hands, 44 Ch. Div. 503, was an equity case. The covenant under construction was one in a lease of a public house by the lessee, his executors, administrators, and "permitted assigns," whereby the lessee covenanted with the lessors, their heirs, executors, administrators, and assigns, that he would not during the term, "directly or indirectly, buy, sell, or dispose of upon the premises any ales or stout, other than such as shall have been bona fide purchased of the said lessors," etc. The lessors afterwards sold the reversion in the public house and benefit of the covenant and also their brewery to Clegg, and retired from business. The purchaser closed the purchased brewery, and carried on business as brewer at a different brewery. The lessee did not take beer from Clegg, and suit was brought by the lessors and Clegg, as co-plaintiffs, to restrain the defendant from selling any beer other than such as should be purchased from

Clegg directly or through the original lessors. The contention was that the covenant was not one running with the land. The court held that it was not a personal, unassignable covenant, but one running with the land. Cotton, Ld. J., said:

"It is a contract relating to the way in which the business at a particular house is to be carried on. Therefore it is a contract relating to the public house, just as much, in my opinion, as a contract as to the mode in which the cultivation of a particular bit of land is to be carried on relates to the land. It effects the value of the reversion, it effects the house, and, in my opinion, it is a contract running with the land."

This case was also decided upon another ground, which we will have occasion to refer to in a subsequent part of this opinion.

White v. Hotel Co. [1897] 1 Ch. 767, is a case very much in point. White, a wine merchant, owned an hotel, which he leased for 30 years, at a rental of £1,500 per annum. The lessee covenanted with the lessor, his heirs and assigns, that he would not during the term sell on the premises any other foreign wines than should have been supplied by the lessor, his successor or assigns, and the lessor agreed that so long as this covenant should be observed he would allow the lessee an abatement of £75 from each quarter's rent. The lessor died during the term. His executors sold his wine business to A. & B., and the lessee assigned the lease to the defendants, who claimed that, so long as they continued to buy wines from the persons who bought the lessor's wine business, they were entitled to an abatement of the rent. It was held that, although the covenant to buy wines did not in terms include the assignee of the lease, the burden of it was with the tenant's interest under the lease, and that, although neither White nor his executors were in the wine business or benefited by purchases made from those who had bought that business, the assignee of the lessee, being bound by the covenant, was entitled to the benefit of the proviso for abatement of rent.

We reach the conclusion that the Haldeman Paper Company, as assignee of Friend, became bound by the covenant in the lease in the same manner and to the same extent that its assignor had been bound. When it exercised its option of purchase, the relation of lessor and lessee ceased to exist, and that of vendor and vendee was created. This brought into force all the provisions of the lease which related to the subject of a sale of the property to the lessee, and the rights and liabilities of the Haldeman Paper Company were precisely those which would have existed in respect of Friend, had he exercised his option of purchase. The lease contract contains many provisions in the nature of covenants, restrictions, and conditions which obviously have application only to the relation of lessor and lessee, and should find no place in the deed. These we have not deemed it necessary to set out, inasmuch as there has been no controversy over their application. Those paragraphs of the agreement which in any way relate to the contract of sale are found in the statement of the case. That the covenant in respect to a restricted use of the premises was intended to extend to any purchaser of the property who became such by an exercise of the option of purchase contained in the lease is most obvious. The clause giving to the lessee, "his heirs and assigns," the

option or privilege of purchasing upon the terms heretofore stated, is followed by the covenant of the lessee with the lessor, "its successors and assigns," "as part of the consideration of this agreement, and as an inducement to the said first party to enter into this agreement, that he shall not and will not, during the term created by this lease, or any extension thereof, or in case of the purchase of said premises as above provided for within the period of twenty years from date hereof, * * * directly or indirectly, as employer, employé, agent, officer, or stockholder or otherwise, manufacture on said premises, or engage in or be interested in the manufacture on said premises, of strawboard, wood-pulp board," etc.; "and the sum of $20,000, to be recovered by and paid to the said American Strawboard Company, its successors or assigns, is hereby fixed and agreed upon as and for liquidated damages, to the payment of which said sum of $20,000, well and truly to be made to the said American Strawboard Company, its successors or assigns, the undersigned binds himself, his heirs, executors, and administrators, firmly by this contract, in case of any violation of this paragraph by him." "It is further agreed that, in case of the violation of this paragraph of this agreement, as a further remedy said first party may, at its option, avoid this lease, and enter into possession of the demised premises, and also restrain by injunction the violation of this paragraph of this agreement."

If this covenant was a valid one, and was enforceable against the admitted assignee of Friend, why shall it be excluded from the deed which the lessor and vendor must deliver? The contract of sale distinctly provides for its extension to any purchaser under the option of the lease. It is therefore as much one of the terms of sale as any other of the provisions of that contract. It was one of the inducements for a sale, and distinctly constituted a part of the consideration for the property. That the Haldeman Company, as a purchaser under the terms of the option, is personally bound by this stipulation, whether it be regarded as a simple agreement concerning the use of the property or a covenant technically running with the land, is hardly debatable.

Whether it is a covenant which will pass with the land to a grantee of the Haldeman Company under a deed which does not contain it, so as to give to the American Strawboard Company, or its successors, a right of action in a court of law for a breach of the covenant by such an assignee, is another question,—one not necessary to be now decided, inasmuch as the only point involved by this writ of error is whether or not the vendor was entitled to insist upon its insertion in the deed. The doubts and difficulties which surround the enforcement of covenants of this kind arise chiefly when it is sought to maintain an action at law against or in favor of assignees, claiming through grantors under deeds which do not contain the restrictions found in the title deeds of their vendors. But here we are not called upon to determine whether the burden of this covenant will pass by operation of law to an assignee taking by deed free from such a covenant. Whether this is a covenant which will pass with the land to a grantee of the Haldeman Company or not, it is a valid and an enforceable covenant, in both law and equity, as between the American Strawboard Company

and the Haldeman Paper Company, and this alone affords a sufficient reason for its insertion in the deed as one of the terms of the agreement of purchase and sale. Why shall the purchaser be heard to object to the inclusion of this term of the agreement in the deed of conveyance? It is not inconsistent with the covenant to convey by a good and sufficient warranty deed, for the bargain includes this very restriction on the use, and the warranty will not include a qualification expressly mentioned in the deed itself.

To omit this covenant from the deed upon the theory that it is unnecessary, being already in the lease, would only throw the whole matter in doubt; doubt as to whether the lease, though recorded, is notice to one who shall buy without actual notice and upon the faith of a deed containing no such restriction, and doubt as to whether the omission of the stipulation from the deed was not according to the ultimate agreement of the parties. If this restriction be incorporated in the deed, a purchaser of any interest will be affected by constructive notice that the seller held the property under a valid agreement that it should not be used in a particular business. Under such circumstances, a court of equity, irrespective of whether the agreement was such as would technically pass with the land, would compel its observances by one who acquired the property with notice, actual or constructive. It is now well settled that one who purchases property with notice that the seller held the property under a valid agreement with a third person, whereby he was prohibited from using the property in a particular way, will, in a court of equity, be held to hold the property subject to the same restrictions which bound the seller. In the now leading case of De Mattos v. Gibson, 4 De Gex & J. 276–282, this equitable principle was most admirably stated by Lord Justice Knight Bruce, who said:

"Reason and justice seem to prescribe that, at least as a general rule, when a man, by gift or purchase, acquires property from another, with knowledge of a previous contract, lawfully and for a valuable consideration made by him with a third person, to use and employ the property for a particular purpose in a specified manner, the acquirer shall not, to the material damage of the third person, in opposition to the contract and inconsistently with it, use and employ the property in a manner not allowable to the giver or seller."

This doctrine was applied in Tulk v. Moxhay, 2 Phil. Ch. 774, in a case where a covenant was contained in a deed which was assumed to be one which did not run with the land. The land affected by the covenant had passed to a grantee who bought with notice of the covenant in the deed of his grantor, but held under a deed which made no mention thereof. Lord Chancellor Cottenham, among other things, said:

"It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor and with notice of which he purchased. Of course, the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assigns being allowed to escape from the liability which he had himself undertaken. That the question does not depend upon whether the covenant runs with the land is evident from this: that if there was a mere agreement, and no

covenant, this court would enforce it against a party purchasing with notice of it: for, if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased it."

Concerning Keppell v. Bailey, 2 Mylne & K. 547, the lord chancellor said that Lord Brougham "could never have meant to lay down that this court would not enforce an equity attached to land by the owner, unless under such circumstances as would maintain an action at law. If that be the result of his observation, I can only say that I cannot coincide with it." Wilson v. Hart, 1 Ch. App. 463, involved a covenant by the owner of a freehold house with the plaintiff, who was a previous owner, that the building should not be used as a beer shop. The house was afterwards let to the defendant, who had no express notice of this restriction. The question as to whether the covenant ran with the land was reserved, the court holding that, if it did not, the defendant was bound by it in equity, as a purchaser who does not inquire into his vendor's title is affected with notice of what appears upon it, and that this applies as well to a yearly tenant as to the purchaser of a greater interest. Luker v. Dennis, 7 Ch. Div. 227, was a case of a brewer's covenants. The lessee of a public house covenanted with the owner and lessor, who was a brewer, that he and his executors and assigns would purchase from the lessor all the beer consumed at that public house and also at another of which the lessee had a lease under another landlord. It was held that the covenant, whether one running with the lease or not, at law, was binding on an assignee of the second public house, who had notice of the covenant. Keppell v. Bailey, 2 Mylne & K. 517, so far as it held that a restrictive covenant as to the use of land which does not run with the land, at law, is not binding in equity upon an assignee with notice, was declared to have been overruled by later cases. Catt v. Tourle, 4 Ch. App. 654, already referred to upon another point, was this: The plaintiff, a brewer, sold land to the trustees of a building society, who covenanted with the vendor that he, his heirs and assigns, should have the exclusive right of supplying beer to any public house erected on the land. The defendant, who was a member of the society, and a brewer, acquired a portion of the land with notice of the covenant, and erected on it a public house, which he supplied with his own beer. The covenant was held valid, and the defendant restrained from acting in contravention of it, Selwyn, Ld. J., among other things, saying that "it was needless to consider the question which has been so much discussed, whether covenants of this nature run with the land; * * * that the defendant, having constructive notice of it, was bound by it in equity." Keppell v. Bailey, 2 Mylne & K. 517, so much relied upon in the argument of counsel for the defendant in error, is, by the later opinions we have cited, completely overthrown, so far as Lord Brougham decided that a court of equity would not enforce a covenant which did not run with the land, at law.

Stines v. Dorman, 25 Ohio St. 580, is an instructive case, and much in point, inasmuch as the property herein involved is situated in Ohio. The facts of that case were these: Dorman purchased from one Blakly an hotel known as the "Tremont House," and in part payment

therefor Dorman sold to Blakly the Commercial House, situated in the same town, and theretofore used as an hotel. The deed of Dorman to Blakly contained a covenant that the property bought by Blakly should not be used by the grantee, his representatives or assigns, as an hotel or public boarding house so long as the Tremont House should be used for such purposes. Blakly sold to Blood, inserting a like covenant, and Blood conveyed to Stines, the deed omitting this restriction, and the latter opened the house as a public hotel. Dorman sought by injunction to restrain Stines from so using the property. The court said:

"It is unnecessary to determine whether the stipulation contained in the deed in question is to be regarded technically as a covenant running with the land. However this may be, it has, in equity, the effect of such covenant as against the grantee and his assigns. The stipulation relates to the mode in which the premises conveyed are to be enjoyed, and qualifies the estate. This limitation on the use enters into the consideration of the conveyance; and, if not unlawful, it ought, upon plain principles of justice, to be enforced."

This recognition and enforcement in equity of agreements or covenants by which a lessee or owner of lands is restricted in their use, in the interest of other lands owned by the covenantor, or of a business conducted by such covenantor, has found general recognition in courts of equity of this country, and the doctrines applicable to such covenants, easements, or servitudes is thoroughly established in accord with that of the English courts. Jones, Real Prop. § 780; Barrow v. Richard, 8 Paige, 351; Trustees v. Lynch, 70 N. Y. 440; Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335; Whitney v. Railway, 11 Gray, 359; Morris v. Manufacturing Co., 83 Ala. 565, 3 South. 689; Coughlin v. Barker, 46 Mo. App. 54; St. Andrews' Lutheran Church's Appeal, 67 Pa. St. 512.

The conclusion we reach is that the vendor had a right to insert in the conveyance the stipulation restricting the uses and enjoyment of this property. It was one of the considerations leading to the sale, and an express term of the agreement. Being valid, irrespective of its technical character, as a covenant running with the land, the purchaser has no right to stand upon the demand for a deed excluding it. The parties to a contract of purchase and sale of land are entitled to have carried into the deed every stipulation which affects the rights and obligations of either under the agreement of sale. In re Birmingham, etc., Land Co. [1893] 1 Ch. 352. This manifestly sound principle is not affected by the question as to whether the stipulations when inserted will constitute a technical covenant running with the land. It was error to instruct the jury to find for the defendant in error. It was also error to refuse the instruction asked to find for the plaintiff in error. The evidence in respect to the ground upon which defendant in error refused to accept the deed tendered, and in respect to its demand for a deed free from all covenants and restrictions touching the enjoyment of the property, was such as that the jury could not have reasonably found that the plaintiff in error had so breached its covenant to convey as that this action would lie. Under such a state of the evidence it was the duty of the court to have instructed the jury to find for the plaintiff in error. The judgment will be reversed, with directions to grant a new trial.