MAGNOLIA PETROLEUM CO. v. SUITS et al.
FYKE et al. v. MAGNOLIA PETROLEUM
CO. et al.

Nos. 183–190.

Circuit Court of Appeals, Tenth Circuit.
April 4, 1930.

Rehearing Denied May 14, 1930.

See, also, 31 F.(2d) 205.

B. B. Blakeney, of Oklahoma City, Okl. (W. H. Francis, of Dallas, Tex., and Hubert Ambrister, of Oklahoma City, Okl., on the brief), for complainant.

J. H. Jarman and J. B. Dudley, both of Oklahoma City, Okl. (J. B. Allen, J. H. Everest, Fred E. Suits, and Wilbur J. Holleman, all of Oklahoma City, Okl., on the brief), for respondents.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

This suit was brought by Magnolia Petroleum Company, a Texas corporation, to enjoin Suits and Holleman, lessees of the Union Missionary Baptist Church, from drilling an oil and gas well on a plot of ground, 180 feet by 302½ feet, in the northwest corner of a 40-acre tract in Pottawatomie County, Oklahoma, and from producing and taking oil and gas through the well. The bill was dismissed on final hearing and plaintiff has appealed. There is no controversy about the facts. Laura L. Fyke and her husband owned the 40 acres and adjoining lands. In June, 1922, they gave an oil and gas lease on these lands, including the forty, to the Magnolia Company. That company has producing wells on the 40 acres. One of them is 330 feet from the plot of ground above described. In February, 1912, the Fykes conveyed said plot by warranty deed to the church. The deed contains this paragraph:

"This deed is made expressly upon the condition that the said premises herein granted are to be used exclusively for a site for the erection and maintenance of a church building for the said Union Missionary Baptist Church, and whenever the same shall hereafter cease to be used for such purpose, this deed shall become void and the title to the said premises shall revert to the grantors herein, their heirs and assigns."

The church erected a building on the site and it has ever since used it for church purposes.

We are not concerned with the latter part of the paragraph, that part after the word "Church," which deals with forfeiture. It is not claimed that the church has forfeited its title. That question is not in this case. This is a suit in equity by the grantors' lessee to protect its claimed rights as lessee by enforcing the restricted use of the church site, as provided in the deed, that is, that part of the paragraph down to and including the word "Church."

It is the contention of the Church and its lessees that the former took the fee, determinable though it be on condition subsequent, which is inconsistent with restricted use, that the fee vests unlimited dominion. The trial court so ruled and held that plaintiff was not entitled to equitable relief. We think it erred. From an early date equity has enforced restrictions on use in favor of the grantor and his assigns, if damaged by additional use, against the grantee and his assigns with notice, no matter what the title taken by the grantee may be. This is one of the many instances of relief in equity from the harsh rules of the common law, well expressed by the Supreme Court of North Carolina in Guilford County v. Porter, 167 N. C. 366, 83 S. E. 564, 565:

"It is contended by the plaintiff that the provision [of restricted use] in said deeds is void: First, because the condition is repugnant to the estate in fee simple already grant-

ed, and that such condition should be rejected and treated as surplusage. This position is untenable. If such a construction of a deed ever obtained in this state, it does not now. The narrow rules of the common law in construing deeds and other instruments, as expounded in Hafner v. Irwin, 20 N. C. 570, 34 Am. Dec. 390, taken from Coke & Blackstone, have given way to a more enlightened and broader doctrine. The whole of a deed is now so construed as to effectuate the plainly expressed intention of the grantor, and to carry out the manifest purposes of the parties. The technicalities of the common law will not be permitted to override the intention so expressed."

The subject is treated at length by Mr. Pomeroy in his treatise on Equity Jurisprudence (4th Ed.) §§ 689, 1295, and 1342. English and American cases are there cited sustaining the equitable right to enforce restrictions on use by a grantee in favor of one who may be injured by their violation. The Sixth Circuit, in an opinion by Judge Lurton, in American Strawboard Co. v. Haldeman Paper Co. (C. C. A.) 83 F. 619, 625, considered the subject. There the owner of a manufacturing plant leased it to one Friend, with an option to purchase. Should the option be exercised the lessor agreed to convey the property by good and sufficient warranty deed. The lease contained a restriction on use of the premises, which was to continue if the option to purchase should be exercised, for twenty years thereafter. Friend assigned the lease and option and his assignee demanded a warranty deed without the insertion therein of a clause expressive of the restricted use, which on being refused, was made the ground of breach of contract in an action at law for damages by the assignee. The court held that the vendor, for its protection, had a right to have the deed express the restricted use, and hence there was no breach. The authorities on the point now under consideration were reviewed and Judge Lurton, speaking for the court, said:

"The general principle is that if the covenant relate to the mode of enjoying the leased lands, whether for the benefit of the reversion, or of other lands of the lessor, or of a business conducted elsewhere by him, it is a covenant which, in the language of the old cases, 'touches' or 'concerns' the demised premises. * * * If this covenant was a valid one, and was enforceable against the admitted assignee of Friend, why shall it be excluded from the deed which the lessor and vendor must deliver? The contract of sale distinctly provides for its extension to any

purchaser under the option of the lease. It is therefore as much one of the terms of sale as any other of the provisions of that contract. It was one of the inducements for a sale, and distinctly constituted a part of the consideration for the property. That the Haldeman Company, as a purchaser under the terms of the option, is personally bound by this stipulation, whether it be regarded as a simple agreement concerning the use of the property or a covenant technically running with the land, is hardly debatable. * * * To omit this covenant from the deed upon the theory that it is unnecessary, being already in the lease, would only throw the whole matter in doubt; doubt as to whether the lease, though recorded, is notice to one who shall buy without actual notice and upon the faith of a deed containing no such restriction, and doubt as to whether the omission of the stipulation from the deed was not according to the ultimate agreement of the parties. If this restriction be incorporated in the deed, a purchaser of any interest will be affected by constructive notice that the seller held the property under a valid agreement that it should not be used in a particular business. Under such circumstances, a court of equity, irrespective of whether the agreement was such as would technically pass with the land, would compel its observance by one who acquired the property with notice, actual or constructive. It is now well settled that one who purchases property with notice that the seller held the property under a valid agreement with a third person, whereby he was prohibited from using the property in a particular way, will, in a court of equity, be held to hold the property subject to the same restrictions which bound the seller. * * * This recognition and enforcement in equity of agreements or covenants by which a lessee or owner of lands is restricted in their use, in the interest of other lands owned by the covenantor, or of a business conducted by such covenantor, has found general recognition in courts of equity of this country, and the doctrines applicable to such covenants, easements, or servitudes is thoroughly established in accord with that of the English courts. * * * The conclusion we reach is that the vendor had a right to insert in the conveyance the stipulation restricting the uses and enjoyment of this property. It was one of the considerations leading to the sale, and an express term of the agreement. Being valid, irrespective of its technical character, as a covenant running with the land, the purchaser has no right to stand upon the demand for a deed excluding

it. The parties to a contract of purchase and sale of land are entitled to have carried into the deed every stipulation which affects the rights and obligations of either under the agreement of sale."

The Supreme Court of Oklahoma has sustained this right to relief in equity. In Priddy v. School District, 92 Okl. 254, 219 P. 141, 143, 39 A. L. R. 1334, the action was at law for trespass and damage by those claiming the reversion, because of asserted forfeiture. An acre of land had been deeded to the district. The deed contained this in the habendum clause: "As long as used for a schoolhouse site. If it is ever abandoned as a schoolhouse site, said land shall revert to Frank B. Eddy." The district constructed a school building on the site. It gave an oil and gas lease on the acre and the lessee brought in a producing well. The court held that the district took the fee on condition subsequent, but the acre not having been abandoned as a schoolhouse site, the condition had not happened, there was no reverter; hence the law action, depending on title in the plaintiffs, was not maintainable. But the court, in cautious regard of the plaintiff's rights, said: "The deed provides for forfeiture, if the property should be abandoned as a school site, but does not provide for a forfeiture by the additional use of the property. If the additional use of the property for the production of oil constitutes a wrong, the courts of equity of the state have been open at all times for enjoining the wrong complained about, and as equity affords a remedy, the law will not imply a forfeiture for an act for which the parties did not express a forfeiture in the grant. * * * Having arrived at the conclusion that the additional use of the property will not work a forfeiture, it is immaterial whether or not the acts complained of constitute a misuse, or wrongful use of the property, as the plaintiff's right to recover in this action depends entirely upon whether or not the acts complained of operated to divest the title from the district and vest same in the plaintiffs." See, also, Los Angeles University v. Swarth (C. C. A.) 107 F. 798, 54 L. R. A. 262; School District No. 100 of Wilson County v. Barnes, 110 Kan. 25, 202 P. 849; Board of Directors v. Fleak, 120 Kan. 570, 245 P. 150; Johnson v. Elkhorn Gas & Coal M. Co., 176 Ky. 676, 197 S. W. 409; Watrous v. Allen, 57 Mich. 362, 24 N. W. 104, 58 Am. Rep. 363; 18 C. J. p. 397, § 463. There can be no doubt about the threatened acts of Suits and Holleman inflicting damage on the Magnolia Company. It appeared at the trial that Suits and Holleman had put down a well on the school site pending this suit and were producing oil therefrom. It appears from the testimony that an oil well will drain a surrounding territory of about ten acres of its oil deposits unless what is known as an offset well is put down, and a well for that purpose would have cost the Magnolia Company, according to the proof, $40,000. The Magnolia Company was entitled to all of the oil under this forty, and Suits and Holleman took their lease from the church with knowledge of the rights of the Magnolia Company. The lease from the church held by Suits and Holleman was executed in its behalf by defendants Youts, Boyd, Nelson, Roberts and White, as its trustees. They thus participated in encroaching upon the rights of the Magnolia Company to its damage.

The decree dismissing appellant's bill is reversed with direction to the district court to enter a decree granting the relief prayed, and that damages in favor of plaintiff below for the oil and gas taken by Suits and Holleman be assessed against them and the said trustees of said church, jointly and severally. The Magnolia Company shall recover its costs on this appeal.

Laura L. Fyke and her husband filed a cross bill against their co-defendants, in which they alleged the church and its lessees had no right to mine oil and gas on the church site, and they asked that their title thereto be quieted subject to the lease which they had given to the Magnolia Company. They further prayed that they have judgment for all royalties on oil and gas produced from the premises. So far as appears, all proper parties to the cross bill were citizens and residents of Oklahoma. The court was without jurisdiction over the controversy thus raised between them. The appeal of the Fykes will be dismissed at their costs, reserving to them, however, their right to maintain an action or actions against Suits and Holleman and the trustees of the church for damages suffered by them, if any, by payment of royalties on oil and gas produced under the Suits and Holleman lease.