## FARR v. DETROIT TRUST CO.
### No. 8526.

Circuit Court of Appeals, Sixth Circuit.
Jan. 14, 1941.

F. Fernandez Cuyar and H. Gonzales Blanes, both of San Juan, P. R., for appellant.

Gabriel de la Haba, Monserrat, de la Haba & Monserrat, and Rafael Rivera-Zayas, all of San Juan, P. R., for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and HARTIGAN, District Judge.

808

William A. Lucking, of Detroit, Mich. (Lucking, Van Auken & Sprague, of Detroit, Mich., on the brief), for appellant.

L. H. Fead and William Butler, both of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., on the brief), for appellee.

Before HAMILTON, ARANT, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Philip M. Ikeler, a citizen of the State of Mississippi, and Amy Gerhauser, a citizen of the State of Ohio, brought suit against the Detroit Trust Company, Properties Corporation, William McPherson Estate, Inc., M. J. McPherson Estate, Inc., Alec McPherson Estate, E. G. McPherson Corporation, McPherson State Bank of Howell, Michigan, corporations of the State of Michigan, and R. Bruce McPherson and Merton E. Farr, citizens of Michigan.

Defendant Farr in the original action, appellant here, filed a cross-claim against his co-party defendants, which the court dismissed on jurisdictional grounds and from that order and another later referred to, he prosecutes this appeal.

The factual outline of the case is that between 1906 and 1910 several syndicates were formed by citizens of Detroit, Michigan, for the purpose of purchasing timber land in Oregon, each to own a certain area and each subscriber to be given participating shares in each syndicate. About September 25, 1906, appellant Farr, with other individuals, formed one of these syndicates which entered into a contract with George L. McPherson and John A. McPherson as agents to purchase for it and manage the timber lands in Oregon.

On January 23, 1907, appellant Farr and the other members of the Syndicate, known as "Trust No. 502", entered into a contract with the appellee, Detroit Trust Company, under which it was agreed that title to the lands should be taken in the name of the Trust Company to be held in trust for the syndicate members and to be conveyed by said Trust Company to such persons at such times, in such quantities and for such prices as representatives of the syndicate should direct in writing and that the proceeds of the sale should be distributed by the Detroit Trust Company among the syndicate members as directed by its representatives.

At the same time that "Trust No. 502" was created, other groups in Detroit also formed similar syndicates for the purchase of similar land in Oregon and in each case the Detroit Trust Company was trustee with the same powers and duties as in "Trust No. 502." These trusts were known and called by the parties "Trust No. 610," "Trust No.

704," "Trust No. 564" and "Trust No. 843." Originally, Farr had an interest in all the trusts but prior to August, 1936, he assigned all of his interest in Trust No. 843 to his son and on August 11, 1936, transferred 100/1941 of his interest in Trust No. 704 to his daughter, Amy Gerhauser (one of the plaintiffs in the original action and a resident of Ohio). Plaintiff Ikeler had an interest only in Trust No. 843. The Detroit Trust Company took legal title to the lands in its own name but under the terms of the contract as trustee for the syndicate owners.

On March 15, 1929, under written directions of the sales committee of the syndicate members of Trust No. 502 (of which Farr was a member), the Detroit Trust Company (then named Detroit & Security Trust Company) executed a logging contract with the East Side Logging Company, an Oregon corporation, for the cutting and removing of all merchantable timber on certain tracts of land owned by the syndicate. The Trust Company did not prepare the contract which it is alleged was done by the McPhersons and approved by appellant Farr as a member of the committee.

The logging company cut and removed timber under the contract for several years during which time it did not burn the annual slashings and stumps as required under the provisions of the Oregon Code, 1930, Sec. 42-421, passed for the purpose of removing fire hazards and as a precaution against the spread of fires.

About November 3, 1934, the members of Trust No. 502 terminated it and formed a corporation under the name of "Properties Corporation" which is a defendant in the original action, and appellant Farr was made its president and negotiated with the Trust Company to have all the properties conveyed to the corporation. All the members of that trust in writing requested the Detroit Trust Company to convey the property to the Properties Corporation and agreed that any liability on any account incurred by the Trust Company by reason of holding the lands under the trust instrument was the liability of the syndicate members. The Trust Company, in reliance upon the express authorization of the members of the syndicate and the release, conveyed to the Properties Corporation all the properties of Trust No. 502 valued at approximately $300,000.

In August, 1933, a fire broke out on the lands of Trust No. 502 due to the failure of the logging company to properly clean up after its operations and it spread to Trusts 610, 843 and 704 and also to other contiguous properties, causing considerable damage. A lawsuit was filed in the State of Oregon in 1935 by other timber owners, not members of the syndicates, to recover damages, as a result of which the Detroit Trust Company, as record owner of the lands of Trust 502, was required to pay a large sum in settlement. Notice of the suit was given by the Trust Company to individual members of syndicate 502 and an opportunity to defend, which was declined though some of them reimbursed the Trust Company after the settlement.

On January 8, 1936, the Properties Corporation in writing notified the appellee, the Detroit Trust Company, that it had elected to rescind, on the ground of fraud, the conveyances theretofore made by the Trust Company and it tendered to the Trust Company deeds reconveying the property and demanded the release theretofore given. The Trust Company declined the tender and refused the demand.

On August 14, 1936, three days after receiving her interest in Trust No. 704 from her father, Amy Gerhauser and Philip Ikeler, a member of syndicate 843, instituted the present action against the Detroit Trust Company and the McPherson interests, claiming collusion between them in making the contract with the East Side Logging Company, a financially irresponsible concern. They stated it was made because the logging company was indebted to the McPhersons and that they controlled the Detroit Trust Company, and since the logging company had no financial responsibility and, together with the McPhersons and Detroit Trust Company, had neglected to comply with the provisions of the Oregon law, the plaintiffs had suffered great damage by spreading of the fire from Trust 502 to Trusts 704 and 843 in which they had an interest. They alleged the Detroit Trust Company and the McPhersons were liable for the resulting damages to them, and asked that Trusts 502, 843, 610, 704 and 564 be wound up and that all members of the syndicates who so desired be permitted to intervene and that they should not be required to make contribution to the Detroit Trust Company by reason of the fire loss. Appellant Merton Farr was made a defendant to the suit only as a member of syndicate 502 and

was not served with process and no relief was asked against him.

On August 19, 1936, appellant Farr filed answer to plaintiff's petition and also filed a cross-claim against his codefendants and later other owners of 704 and 843 intervened as parties plaintiff. In his answer he confessed substantially all of the allegations of plaintiff's petition and joined in its prayer. In his cross-claim he stated he was a syndicate member of Trusts Nos. 502, 704 and 843 and that his interest in each had a fair market value of more than $10,000 and that each had sustained a large sum in damages by reason of the fire on Trust 502. He charged that the Trust Company, after the fire, negligently failed to salvage the burned-over timber and further claimed he was in no way liable to the Detroit Trust Company for contribution, by reason of its settlement for damage to contiguous timber owners due to the fire. He made various other claims and charges which are not material to the question here. He prayed that the logging contract with the East Side Logging Company be held to be fraudulent as to the members of syndicate 502 and that it be cancelled. He further prayed that the appellee, the Detroit Trust Company, be held liable for all the losses sustained by each of the members of each of the syndicates and that the trusts be wound up, the Detroit Trust Company be removed as trustee and that, notwithstanding the transfer of the properties of Trust 502 by the appellee, the Detroit Trust Company, to the Properties Corporation, it be held liable to the syndicate members for the resultant fire damages.

He further prayed that the Trust Company be enjoined from prosecuting any suit for contribution from any syndicate members by reason of the settlement of the fire damages and for any further relief to which he was entitled.

In 1938, the Detroit Trust Company settled in full the actions filed against it in Oregon for damages because of the fire, by the payment of $175,000 and so advised appellant Farr before the negotiations were completed. Immediately after the settlement, the Trust Company demanded contribution from all members of Trust 502, which appellant Farr continuously refused and the Trust Company in 1939 sued him in the State Court of Michigan for his proportionate share of the sum paid.

Appellee, the Detroit Trust Company, first answered appellant Farr's cross-claim and later moved to dismiss, its motion being sustained on the ground that the court was without jurisdiction.

Appellant Farr moved for an injunction restraining appellee, Detroit Trust Company, from prosecuting its action against him in the State Court for contribution and, from the order denying his motion, he also appeals.

The averments of plaintiff's original petition and its prayer for relief show that the suit was one for relief in favor of the plaintiffs, citizens of Ohio and Mississippi respectively and that all of the defendants were citizens of the State of Michigan. Appellant Farr by his answer and cross-claim shows that he has no controversy of any kind with the plaintiffs in the original action, which is also shown by their petition. His sole quarrel is with his codefendants. So far as his suit is concerned, as gathered from his cross-claim, it is substantially one by and for the benefit of citizens of Michigan against other citizens of the same State. Blacklock v. Small, 127 U.S. 96, 103, 8 S.Ct. 1096, 32 L.Ed. 70. Appellant does not seriously contest this statement but insists that the court is controlled by the rule that where the counterclaim or cross-claim relates to the same subject matter as the original petition, the citizenship of the parties is immaterial and urges that as the court has jurisdiction of the original petition, it has jurisdiction of his cross-claim and that the latter need not disclose grounds for federal jurisdiction. This concept originates with the doctrine of avoidance of a multiplicity of actions.

Rule 13(a) of the Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, makes it mandatory that a defendant file all counterclaims which he has against the plaintiff arising out of the transaction or occurrence, which is the subject matter of plaintiff's claim and does not require for adjudication, the presence of third parties of whom the court cannot acquire jurisdiction. Sub. (b) permits the filing of any counterclaim against an opposing party, even though it does not arise out of the transactions or occurrences, which are the subject matter of the opposing parties' claim and it further provides that when the presence of additional parties is required for the granting of complete relief

in the determination of a counterclaim, the court shall order them to be brought in as defendants if jurisdiction then can be obtained and if their joinder will not oust the court of jurisdiction. Sub. (g) provides that a pleading may state as a cross-claim, any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter, either of the original action or of any counterclaim. This rule does not enlarge the jurisdiction or affect the venue of actions in the United States Courts, Rule 82 of Rules of Civil Procedure, 28 U.S.C.A. following Section 723c.

■ The present jurisdiction of the court rests solely on diversity of citizenship and in such actions, in order to avoid constitutional limitations, the controversy must be in fact of such character. It does not follow that because an action is instituted with the contesting parties of diverse citizenship that the court can force into it all other persons, either citizens or aliens, whose controversies may have some relationship to the original action. Shields v. Barrow, 17 How. 129, 58 U.S. 129, 145, 15 L.Ed. 158.

■ For present purposes Rule 13(a), (b) and (g) supersede old Equity Rule 30, 28 U.S.C.A. following section 723, and appellant's cross-claim must be viewed in the light of its interpretations. A cross-claim is one brought by the defendant against a plaintiff in the same suit or against a codefendant or against both, concerning the matters in question in the original petition. Its purposes are (1) Discovery of facts from the plaintiff or codefendant in aid of the defense to the original petition; (2) to bring before the court new matter in aid of the defense to the original petition; (3) to obtain some affirmative relief as to the matters in issue in the original petition; (4) to obtain full relief for all parties and a complete determination of all controversies which arise out of matters alleged in the original petition; (5) to have affirmative relief against either the plaintiff or codefendant in the nature of an original petition. Morgan's Louisiana T. R. & S. Company v. Texas Central Railway Company, 137 U.S. 171, 200, 11 S.Ct. 61, 34 L.Ed. 625; Kingsbury v. Buckner, 134 U.S. 650, 677, 10 S.Ct. 638, 33 L.Ed. 1047.

■ Tested by these rules, the pleading filed by the appellant was not a cross-claim within the first four classifications.

He confessed the allegations of the original petition and the plaintiffs there made no claim against him and he alleged no fact necessary to a complete determination of the controversy. By his pleading, he sought to bring into the original suit on his own behalf identically the same issues the plaintiffs tendered. It contained none of the essentials of a cross-claim and every characteristic of an original petition.

The plaintiffs in the original action, without any apparent reason, made him a party-defendant and invited him to join with them. He voluntarily appeared, not to aid his codefendants, but to join their adversaries. The plaintiffs had the right to wage their suit alone and their controversy was capable of being fully determined without the presence of appellant.

■■ Where diversity of citizenship is the sole ground of jurisdiction as here, the parties will be aligned in accordance with their real interest and if, upon such alignment, there is no diversity of citizenship between the parties on opposite sides of the controversy, the suit will be dismissed. Niles-Bement-Pond Company v. Iron Molders' Union, 254 U.S. 77, 182, 41 S.Ct. 39, 65 L.Ed. 145; Berg v. Merchant, 6 Cir., 15 F.2d 990. The plaintiffs in the original action on the facts alleged might have stated a cause of action within the jurisdiction of the court but we do not decide that question. Making the appellant with whom they had no controversy a defendant in that action, requires that he be aligned on the side on which he belongs. Lee v. Lehigh Valley Coal Company, 267 U.S. 542, 543, 45 S.Ct. 385, 69 L.Ed. 782. The pleader's arrangement of the parties is not conclusive on the court. The court must look into the real facts and in considering the jurisdictional questions, will rearrange the parties according to the nature of the controversy. Harter Tp. v. Kernochan, 103 U.S. 562, 565, 26 L.Ed. 411; Dawson v. Columbia Trust Company, 197 U.S. 178, 180, 25 S.Ct. 420, 49 L.Ed. 713. This rule is especially applicable when, as here, by co-operation or prearrangement the real parties in interest are manifest. Removal Cases, 100 U.S. 457, 469, 25 L.Ed. 593.

■ It is clear, from the record, that appellant is beneficially interested in the granting of the relief sought by the plaintiffs in the original action and that he is on their side of the controversy. It follows from so aligning the parties that his sole controversy is with citizens of his

own state. De Graffenreid v. Yunt-Lee Oil Company, 5 Cir., 30 F.2d 574; Magnolia Petroleum Company v. Suits, 10 Cir., 40 F.2d 161. The court below properly dismissed appellant's cross-claim for want of jurisdiction.

Appellee did not waive jurisdiction by answering appellant's cross-claim. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338; United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263. This conclusion makes unnecessary discussion of appellant's motion for an injunction. The orders of the District Court are affirmed.