IN RE SEPARATION OF GRADES, TRUNK HIGHWAY NO. 37,
MORRISON COUNTY.
STATE v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

March 1, 1929.

No. 27,088.

G. A. *Youngquist,* Attorney General, for the state.
D. F. *Lyons* and *Frederic D. McCarthy,* for respondent.

[1]Reported in 223 N. W. 915.

TAYLOR, C.

Trunk highway No. 37, extending from the city of Little Falls through the unincorporated hamlet of Lincoln to the village of Motley in Morrison county, was located by the commissioner of highways in May, 1926. It passes through a rough and hilly country. The previously existing highway crossed the track of the Northern Pacific railroad seven times at grade between Little Falls and Lincoln. The railroad company had made a cut through what is termed the summit which depressed its tracks at that point about 28 feet below the natural surface of the ground. Trunk highway No. 37 crosses the railroad tracks only once and by an overhead crossing at this cut. In order to cross at this point, it deviates from the old highway for a considerable distance each side of the crossing. In November, 1926, the commissioner of highways made an application to the railroad and warehouse commission for an order requiring the railroad company, at its own expense, to construct a bridge and approaches to carry the highway over its tracks at this crossing. After a hearing the railroad and warehouse commission made an order that the highway be carried over the tracks at this point by a bridge and that the railway company pay one-half the cost of constructing the bridge. The state appealed to the district court, asserting in substance that it was the duty of the railway company to bear the entire cost and that the railroad and warehouse commission was without power to relieve it from any part of that burden. The district court affirmed the order of the commission, and a further appeal brings the matter before this court.

Both parties concede that the construction of the bridge is necessary; that it is located at the proper place; and that under the common law the railway company would be required to bear the entire cost of constructing it. The question in dispute is whether the railroad and warehouse commission is authorized by statute to divide the cost. For brevity we shall use the term commission to designate the railroad and warehouse commission.

Appellant contends in substance that the power given the commission to divide the cost of separating the grades where railroads

cross public highways authorizes the commission to divide such cost only where the separation is made at existing crossings, and not where it is made at crossings resulting from the laying out of new highways; and that the crossing in question resulted from the laying out of a new highway. Trunk highway No. 37 was one of the highways established by article 16 of the state constitution adopted in 1920, and was definitely located by the commissioner of highways in May, 1926, as authorized by law. It was therefore an existing highway when the application for an order directing the construction of the bridge was made in November, 1926, although that part of the highway crossing the railroad track had not been opened for travel. But in view of the claim that the commission was without power to divide between the parties the cost of constructing the bridge, a brief examination of the legislative enactments conferring authority on the commission in respect to railroad crossings seems necessary.

L. 1911, p. 340, c. 243, §§ 1 and 2, authorized the commission to require the installation of safety devices at dangerous crossings upon complaint made by specified public officers. The claim that this statute relates to existing crossings is doubtless true for the commission could act only upon a complaint charging that a specified crossing was dangerous. But we find nothing in the statute indicating an intention to confine its operations to crossings then existing, and it clearly applies to crossings subsequently established and existing at the time the complaint is made.

L. 1913, p. 421, c. 294, amended § 2 of the 1911 act by adding a provision authorizing the commission to require the construction of an overhead bridge where the railroad had been constructed or its tracks lowered after the laying out of the highway and the tracks were seven feet or more below the natural surface of the ground.

L. 1919, p. 508, c. 434, without referring to prior acts, authorized the commission "of its own motion" to investigate dangerous crossings and to "order the same protected in any manner it may find reasonable and proper, including requiring the company to separate the grades."

L. 1921, p. 873, c. 500, amended this act to read:

"The railroad and warehouse commission of its own motion, may investigate and determine whether any railroad crossing over any street or public highway, *now or hereafter established and traveled, or to be traveled,* in this state, is, *or will be when opened to public travel,* dangerous to life and property, *or either,* and may order the same protected in any manner it may find reasonable and proper, including requiring the company to separate the grades."

The amendment consisted in inserting in the former act the words italicized above. This act also repealed all laws and parts of laws inconsistent therewith. It expressly brought within its operation crossings of highways thereafter established and traveled, or to be traveled, which are dangerous or will be when opened to travel. The repealing provision at least made it certain that the power of the commission to act of its own motion, and to act in respect to all crossings whether then or thereafter established and traveled, or to be thereafter traveled, was not restricted by any of the prior enactments.

In 1923 the legislature made several important changes in the prior laws. Sections 1 and 2 of the act of 1911, as amended by the act of 1913, became G. S. 1913, §§ 4203 and 4204. L. 1923, p. 143, c. 134, § 1 [G. S. 1923, § 4662] amended § 4203 by including the commissioner of highways among the public officers authorized to make complaints as to dangerous crossings, and by including state aid roads and trunk highways among the highways to which the statute applied. It amended § 4204 by adding to the provision authorizing the commission to require the installation of safety devices the following:

"or it may require said railroad company to construct an overhead or maintain an underground crossing and may divide the cost thereof between the railroad company, the town, county, municipal corporation or state highway department interested, on such terms and conditions as to the commission may seem just and equitable." [G. S. 1923, § 4663.]

It also added to this section a provision that no highway should thereafter be laid out so as to cross a railroad at grade until such

crossing had been approved by the commission. L. 1923, p. 657, c. 439, § 2, subd. 1 [G. S. 1923, § 2554(1)] passed a few days later than c. 134, authorized the commissioner of highways

"to contract on an equitable basis with railroad companies for the construction of bridges and approaches necessary for the separation of grades at points of intersection between railroads and trunk highways."

These acts forbade the commissioner of highways, as well as others, to establish a railroad crossing at grade without the approval of the commission. They authorized him to contract "on an equitable basis" [L. 1923, c. 439] with railroad companies for the construction of bridges and approaches necessary for the separation of grades at such crossings. They also authorized him to make complaint to the commission "that any railroad crossing with any * * * state aid road or trunk highway is dangerous" [L. 1923, c. 134] and upon such complaint authorized the commission to require the construction and maintenance of an overhead or underground crossing, and to divide the cost thereof between the railroad company and the highway department.

The commissioner of highways had been appointed under the general highway act, L. 1921, p. 406, c. 323 [G. S. 1923, § 2542, et seq.] and was charged with the duty of locating and constructing the system of trunk highways established by the constitutional amendment adopted at the preceding election. The legislature of 1923 knew that he was then engaged in locating and constructing the highways so established, a matter of general knowledge, and obviously intended that the above provisions should apply in the matter of locating and constructing such highways, for they were the only permanent highways which he was authorized to establish.

L. 1925, p. 424, c. 336 [1 Mason Minn. St. §§ 4743-1 to 4743-17] makes no reference to any of the prior acts. The first twelve sections relate to grade crossings and the measures to be taken to guard against accidents at such crossings.

Section 13 [1 Mason Minn. St. § 4743-13] reads:

"Whenever it is desired, either by the public officials having the necessary authority or by the railway company operating the railroad, to vacate or relocate any crossing of a public highway and a railroad, and an agreement cannot be reached between such public officials and the railway company, either as to the necessity for such vacation or relocation, or as to the place, manner of construction, or a reasonable division of expense in the case of a relocation, either party may file a petition with the commission, setting forth the facts and submitting the matter to it for determination; whereupon the commission, after such notice as it shall deem reasonable, shall conduct a hearing and issue its order determining the matters so submitted."

Section 14 [1 Mason Minn. St. § 4743-14] reads:

"The commission may require any railroad company to construct overhead and maintain underground crossings and separate grades when, in its opinion, the interests and safety of the public require, and no overhead or underground crossing, nor separation of grade, shall be made except upon the petition therefor to the commission, and with the approval of the commission."

The parties give the phrase "to construct overhead and maintain underground crossings" as used in the above section, the same meaning as if it read "to construct and maintain overhead or underground crossings," and we have no doubt that such was the legislative intention.

Section 13 contemplates a division of expense where an existing crossing is relocated, but may not be important in the present case, except as indicating the trend of legislation, for the old crossings were neither vacated nor relocated, but still exist and are used locally. Section 14 gives the commission the broad power to require the company to construct an overhead or underground crossing whenever it deems that the interests and safety of the public require it; and prohibits the making of any overhead or underground crossing or a separation of grades except upon petition to and approval by the commission.

It will be noted that the legislature in the act of 1911 [c. 243] merely gave the commission power to require the installation of safety devices at a particular crossing upon complaint of particular public officers that such crossing was dangerous; that the legislature in each subsequent act added to the power previously given; and that the legislature in no act took away or limited the power given by a prior act. In enacting these several statutes, the legislature is presumed to have known and had in mind all existing laws relating to the subject matter and to have enacted them in the light of such knowledge; and they must be construed so as to harmonize with each other and give full effect to all so far as this may reasonably be done. 6 Dunnell, Minn. Dig. (2 ed.) § 8984, and cases cited.

Viewing the several enactments as a whole for the purpose of ascertaining the legislative will as now expressed therein, we reach the conclusion that the legislature intended to and did confer upon the commission power to determine all questions relating to the matter of railroad crossings, including the power to require that public highways be carried over or under the railroad tracks at such crossings whenever it deemed a separation of grades feasible and necessary for the safety of travelers, and including the power to divide between the railroad company and the other party concerned the cost of constructing the overhead bridge and approaches or the underground passageway found necessary to accomplish that purpose. It follows that the commission had the power to make the order in question.

The commission found, and appellant concedes, that the depression of the tracks and the topography of the land are such that the cost of constructing approaches to the bridge will be merely nominal. Appellant urges however that crossing the tracks at this point made it necessary to construct several thousand feet of new road at a much larger expense than would otherwise have been necessary, and insists that the railroad company should pay such increased expense. The commission held, and we think correctly, that the railroad company could not be required to contribute to

the expense of constructing the highway outside the approaches. A railroad company may be required to construct a bridge and connect it with the highway by proper approaches, but cannot be required to construct a portion of the highway not included within the bridge or approaches. State ex rel. City of Duluth v. N. P. Ry. Co. 99 Minn. 280, 285, 109 N. W. 238, 110 N. W. 975; State ex rel. City of Minneapolis v. G. N. Ry. Co. 136 Minn. 164, 161 N. W. 506. No authority to the contrary has been cited and we know of none.

We concur in the conclusion reached by the learned trial court, and its judgment is affirmed.