## IN RE APPLICATION FOR CONSTRUCTION OF THIRD STREET VIADUCT.
## CITY OF ST. PAUL v. GREAT NORTHERN RAILWAY COMPANY AND OTHERS.[1]

July 26, 1929.

Nos. 27,296, 27,328.

*Eugene M. O'Neill,* for the city of St. Paul.

*F. G. Dorety* and *A. L. Janes,* for Great Northern Railway Company.

[1]Reported in 226 N. W. 470.

*D. F. Lyons* and *Frederic D. McCarthy,* for Northern Pacific Railway Company.

*O'Brien, Horn & Stringer* and *Thomas D. O'Brien,* for St. Paul Union Depot Company.

*Denegre, McDermott, Stearns, Stone & Mackey,* for Chicago, Burlington & Quincy Railroad Company.

HOLT, J.

The city of St. Paul petitioned the railroad and warehouse commission to order the four railroad companies whose tracks are spanned by the Third street bridge west of Commercial street to replace the bridge with one which would adequately serve public convenience and necessity, conformably to a certain plan attached. A hearing was had before the commission. The plan was approved, and the railroads were ordered to contribute one-half of the cost, the cost not to exceed $455,300. There was an appeal to the district court, which resulted in an affirmance of the order. Both the city and the railroad companies appeal.

The westerly approach to the present bridge, as well as to the new, begins at John street. The easterly approach to the present bridge begins at Commercial street. The city now proposes gradually to raise the grade as the bridge runs easterly to connect with Mounds boulevard and Maria avenue on top of Dayton's Bluff: Commercial street is some 90 feet below Mounds boulevard. The grade of Third street from Commercial street east to Maria avenue is over 10 per cent, entirely too steep for present day needs. This proposed plan of a viaduct or bridge from John street to Mounds boulevard and thence on a fill to Maria avenue, something over half a mile in length, at a uniform grade of 4.1 per cent, is by the city deemed necessary effectively to serve the traveling public. The commission found that the total cost of the project would be $803,000, and as we understand it $455,300 of that sum would be required to reconstruct the bridge from John street to Commercial street upon a uniform grade of 4.1. The existing bridge is something over 1,800 feet in length. Maria avenue is 125.6 feet higher than the rail of the most easterly railway track.

Prior to the enactment of L. 1923, p. 143, c. 134 [G. S. 1923 (1 Mason, 1927) § 4663] the law was thoroughly settled that it was the uncompensated duty of a railroad to carry a street crossing its tracks over or under the same when the public safety and convenience so required. This meant both the bridge and approaches, also the subsequent maintenance and future improvement of the same as public demands called for. State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 35 Minn. 131, 28 N. W. 3, 59 Am. R. 313; State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 A. S. R. 581, 8 Ann. Cas. 1047; State ex rel. City of Duluth v. N. P. Ry. Co. 98 Minn. 429, 108 N. W. 269; State ex rel. City of St. Paul v. G. N. Ry. Co. 134 Minn. 249, 158 N. W. 972; State ex rel. City of Minneapolis v. G. N. Ry. Co. 136 Minn. 164, 161 N. W. 506. The record amply sustains the conclusion that the present bridge is unfit, in disrepair, and inadequate in width and strength to meet the demand of travel present and prospective. It also appears that travel is somewhat congested upon the only other two streets (Sixth and Seventh) bridged across the railroad tracks and the Phalen Creek gully. Some of this travel needs to be diverted over another route into the business center of the city, and for that purpose Third street is being widened as a through street west of John street at great expense. The travel on two trunk highways, coming into the city near Dayton's Bluff, which may be turned over this proposed bridge at Mounds boulevard or Maria avenue, will relieve the congestion on the Sixth and Seventh street bridges.

It cannot be denied that the growth of a city may demand expensive changes in its streets both as to grade and width of the roadway or paved part, and also to corresponding changes in the viaducts or bridges which carry the streets across railway tracks. When such viaducts or bridges are not strong enough to carry street car traffic, when the demand for such traffic arises, the railroads must stand or share the cost of strengthening them. City of St. Paul v. G. N. Ry. Co. 138 Minn. 25, 163 N. W. 788, L. R. A. 1917F, 485. Such changes or improvements as to viaducts or

bridges fell solely upon the railroads formerly but may now be apportioned, as above stated, by the commission. We therefore see no reason for exempting the railroads here from the duty of sharing in the cost and maintenance of Third street bridge reconstructed in accordance with approved plan from John street to Commercial street where it meets the new established grade of Third street.

In considering these appeals the court below, as well as this court, must assume the order of the commission to be reasonable and lawful, and the burden is upon those attacking the order to show that it is unreasonable, unsupported by the record, hence arbitrary, or that it violates some statute or constitutional provision. State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201; State v. G. N. Ry. Co. 135 Minn. 19, 159 N. W. 1089; State v. N. P. Ry. Co. 176 Minn. 501, 223 N. W. 915.

As to the appeal of the city, it contends that but for the presence of railroad tracks it would have been entirely feasible at the small cost of $249,000 to carry Third street upon a fill on a 5 per cent grade to Hoffman avenue, a block east of Commercial street, and from that point south and east on the same grade to the two trunk highways mentioned or to Maria avenue. However, with tracks there, a combination bridge and fill would cost $641,000; hence, it is argued, the presence of the tracks entails an additional cost of $386,000, even were the cheapest plan adopted to reach Dayton's Bluff territory; and so it is claimed that under the law as it stood prior to 1923 the lowest cost to the railroad companies for carrying traffic over its tracks by proper grade to Hoffman avenue would have been $641,000, the least sum which should be apportioned between the city and the companies. It is contended that the city may require the approach to the bridge to begin at Hoffman avenue instead of Commercial street, and as authority is cited State ex rel. City of Faribault v. W. M. & P. R. Co. 98 Minn. 536, 108 N. W. 822, where the railroad was required not only to bridge its track on the west bank of Straight river, in Faribault, but to carry the bridge across the river to meet the street on the east bank. However it is to be noted that the city of Faribault had carried the

street across the river years before the railroad laid its tracks which required a viaduct to carry the street over them onto the bridge. When this viaduct and the bridge built by the city became out of repair so that reconstruction was required, the court held it was the uncompensated duty of the railroad to carry the street over its tracks; and, since there was no place to terminate it except on the east bank of the river, it had to carry it over the river by a bridge.

Here the railroad had found a terminus for the east end of the viaduct across its tracks at Commercial street, which intersected Third street on grade; and it would be unreasonable to require it to carry the approach to Hoffman avenue a long distance east of Commercial street and upon a greatly changed grade. In our opinion none of our decisions have gone so far as to compel the railroads to bridge in whole or in part Third street farther east than Commercial street.

The appeal of the railroad companies is based principally on the proposition that State ex rel. City of St. Paul v. St. P. M. & M. Ry. Co. 62 Minn. 450, 64 N. W. 1140, called the Grove street case, is applicable. We agree with the proposition that no duty rests on the railroad companies to bridge east of Commercial street. As between that street and either Hoffman avenue or Mounds boulevard or Maria avenue, the Grove case applies. And we think that is all the commission intended by its reference to that decision, for otherwise it could not have ordered the companies to contribute to the construction of any part of the bridge. The tracks are now laid and Third street bridged from the most westerly to the most easterly track. Suppose the city changed the grade of Commercial and of Third streets by bridging or filling easterly from Commercial street so as to make the approach up from the abutment at the easterly track the same distance and grade as is the existing approach down from that abutment to Commercial street, there ought to be no doubt that the railroads should build such an approach or, when the rest of the bridge over the tracks is inadequate or in need of reconstruction, that the entire bridge should be rebuilt at a grade

to correspond with that of the bridge or fill made by the city to the east of Commercial street, and that under the present law the cost should be equitably divided between the city and the railroad companies. The tracks are there. Third street is bridged over those tracks. The duty of the railroads is to maintain that bridge even though the grade and width of Third street be changed so as to meet the demands of increased travel and the growth of the city and country. The commission was not required to find that the necessity for the proposed bridge west of Commercial street was due solely to the natural conditions of the ground and independently of the presence of the railroad tracks. It of course would be perfectly proper for the commission, in the division of the cost, to consider the additional cost which the greater height of the pillars or supports of the new bridge would entail. This would include not only the additional material but labor in handling and erecting longer pillars; and longer pillars may also call for heavier girth than shorter. But when these and other matters are taken into consideration, the law does not provide that the cost shall be equally divided. Hence the courts may not say that the division here made was arbitrary or unreasonable so far as the railroads are concerned.

As to reconstructing that portion of the bridge west of Commercial street, we do not think the railroads may object to their being compelled to share in the costs on constitutional grounds, for the situation makes applicable the above cited cases in 98 Minn. 536, 108 N. W. 822 [State ex rel. City of Faribault v. W. M. & P. R. Co.], and not the Grove street case, 62 Minn. 450, 64 N. W. 1140.

There might be some ground for the railroads' complaining because the commission divided the cost of the bridge up to the easterly line of Commercial street, including the viaduct carrying that street under Third street. But no particular point is made on that score, possibly because the railroad companies consider they had fair treatment, if any legal obligation at all rests upon them to bear any part of the construction of the proposed bridge. Holding, as we do, that the city has the right to change the grade of Third street, it would seem that the city should carry the cost of

that change from Maria avenue west to the abutment or pillars immediately east of the most easterly railroad track, and from there on to John street the cost should be divided as the commission deems equitable and just.

In our opinion the order should be and is affirmed.