**In re CHICAGO, M., ST. P. & P. R. CO. et al.**

**STATE OF MINNESOTA v. CHICAGO, M., ST. P. & P. R. CO. et al.**

District Court, D. Minnesota, Fourth Division.
May 20, 1931.

Neil M. Cronin, City Atty., and Norton M. Cross, both of Minneapolis, Minn., for City of Minneapolis.

F. W. Root, C. O. Newcomb, and A. C. Erdall, all of Minneapolis, Minn., for Chicago, M., St. P. & P. R. Co.

O'Brien, Horn & Stringer, of St. Paul, Minn., for Chicago, R. I. & P. Ry. Co.

SANBORN, District Judge.

The Chicago, Milwaukee, St. Paul & Pacific Railroad Company and the Chicago, Rock Island & Pacific Railway Company—which companies, for convenience, will be hereinafter referred to as the railroads—re- moved this proceeding to this court. Their petition asserts that they are both citizens and residents of states other than Minnesota; that the state of Minnesota is a nominal party, designated as the complainant in the title because of the provisions of section 4651, Mason's Minnesota Statutes 1927; that the suit in the state court was commenced by the city of Minneapolis by an appeal from an order of the Railroad and Warehouse Commission, and that the city is the real party in interest and the real complainant, and that the entire controversy is wholly between the city of Minneapolis and the railroads; that the proceeding is a suit of a civil nature, and that more than $3,000 is involved. Attached to the petition, aside from the bond on removal, are the findings and the order of the commission which is appealed from, the notice of appeal by the city, and certain exhibits.

The motion to remand is based upon many grounds, but there are actually two questions involved in the determination of this motion: (1) Is this a suit which may be removed from a state court to this court? (2) If it is such a suit, have the railroads a right to remove it?

While the past history of the controversy between the city of Minneapolis and the railroads has no direct bearing upon the questions involved, it is of assistance in understanding the exact situation with which the court is confronted.

The Chicago, Milwaukee, St. Paul & Pacific Railroad Company (hereinafter referred to as the Milwaukee) and the Chicago, Rock Island & Pacific Railway Company (hereinafter referred to as the Rock Island) operate their trains over tracks belonging to the Milwaukee to and from the Milwaukee Depot in the city of Minneapolis and to and from the Rock Island freight house and yards not far distant from the depot. Many trains pass over these tracks each day, and the tracks themselves cross at grade many of the heavily traveled streets of the city. For many years there has been a demand on the part of the citizens of Minneapolis that the grade of the railway tracks and the grade of the streets here involved be separated. In 1913 the city passed an ordinance requiring the Milwaukee to separate the grades by depressing its tracks. It brought suit in this court to enjoin the enforcement of the ordinance. Its enforcement was enjoined by Judge Booth. His decision is found in the case of Chicago, M. & St. P. Ry. Co. v. City of Minneapolis et al. (D. C.) 238 F.

384. In 1921 the city passed another ordinance requiring the railroads to depress these tracks, and a suit was brought by them in this court to enjoin its enforcement. While that suit was pending, the Legislature enacted chapter 336, Laws of Minnesota, 1925, which, among other things, provided: "The commission [Railroad and Warehouse Commission] may require any railroad company to construct overhead and maintain underground crossings and separate grades when, in its opinion, the interests and safety of the public require, and no overhead or underground crossing, nor separation of grade, shall be made except upon the petition therefor to the commission, and with the approval of the commission."

The enactment of this statute was called to the attention of the court, and resulted in an injunction against the enforcement of the ordinance on the ground that the ordinance could not be enforced unless the method of grade separation provided by it was approved by the commission; the court retaining jurisdiction to modify its decree if the commission granted approval. In the prior proceedings in this court, the railroads have admitted that in the public interest there should be a separation of grades, but have contended that the separation should be brought about by the elevation of the railway tracks, while the city has always contended that the proper and reasonable method of separating the grades was to depress the tracks.

The recitals in the decision of the commission, which is attached to the petition for removal, show that on the 25th day of August, 1928, a verified petition was filed with it, requesting the separation of the grades by the elevation of the railroad tracks; that this petition was signed by not less than 116 residents and owners of property adjacent to the railroad right of way or in the immediate vicinity thereof in South Minneapolis, Minn.; that this petition directed the attention of the commission to the matter of grade separation, and that the commission proceeded, upon the petition as well as upon its own motion in the interest and safety of the public, to investigate and determine the matter; that the city of Minneapolis objected to the jurisdiction of the commission, and procured from the state district court of Hennepin county an order directed to the commission to show cause why it should not be restrained from proceeding; that on November 30, 1928, that court denied the city an injunction, holding that chapter 336, Laws of 1925, gave to the commission jurisdiction of the matter in controversy before it; that on December 14, 1928, the city of Minneapolis again questioned the jurisdiction of the commission on the ground that neither the city nor the railroads were asking relief; that the railroads then filed answers to the petition, requesting grade separation by elevation and the apportionment of the cost incident thereto on such terms and conditions as might be just and equitable; that the matter finally came on for hearing on December 18, 1928; and that evidence to the extent of some four thousand pages of transcript and three hundred and seventy-four documentary exhibits was submitted. It appears that the city, while objecting to the jurisdiction of the commission, participated in the proceedings before it, and contended for grade separation by depression of the tracks. The commission reached the conclusion that the grades should be separated by elevating the tracks, and not by depressing them, and, aside from certain specific items of cost, provided that the expense should be borne two-thirds by the railroads and one-third by the city. It was from this order that the city appealed.

■ The proceedings before the commission were not judicial proceedings. The commission was acting in an administrative capacity. The controversy became a suit or a judicial proceeding, if at all, when the city appealed from the order of the commission. While the commission had a public duty to perform with respect to the question as to how the railroad and street grades should be separated, it had no pecuniary interest in the matter, and its function was to determine what method of grade separation it could approve and order, since, under the statute, its approval and order was required before the railroads could be compelled to make any separation of grades. That it might have had the right to enforce its order, if valid, does not make it an indispensable party in a judicial proceeding attacking the validity of that order.

■ The state of Minnesota has no pecuniary interest in the controversy, and is in no sense a real party in interest. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; M., K. & T. Ry. Co. v. Missouri Railroad & Warehouse Commissioners, 183 U. S. 53, 22 S. Ct. 18, 46 L. Ed. 78; Ex parte Nebraska, 209 U. S. 436, 28 S. Ct. 581, 52 L. Ed. 876;

United States v. Beebe, 127 U. S. 338, 8 S. Ct. 1083, 32 L. Ed. 121.

Section 4650, Mason's Minnesota Statutes 1927, gave to the city the right of appeal. Section 4651 provides that, when an appeal is taken, the case shall be tried to the state district court "according to the rules relating to the trial of civil actions." It further provides that "the complainant before the commission, if there was one (otherwise the State of Minnesota), shall be designated as complainant in the district court, and the carrier or warehousemen as defendant," and that, if the court determines that the order appealed from is "lawful and reasonable," it shall be affirmed, but, if it shall be determined that the order is "unlawful or unreasonable it shall be vacated and set aside."

The court, on an appeal from an order of the commission, examines the whole matter in controversy. It receives evidence to determine whether the findings of fact made by the commission can be sustained. It does not try the matter anew as an administrative body nor substitute its findings for those of the commission. The making of regulations governing separation of grades is legislative or administrative, and not judicial. The question as to whether the order requiring the separation and prescribing the method to be used is lawful and reasonable is a judicial question. The order of the commission may be vacated if contrary to law, if beyond the powers of the commission, if unsupported by the evidence, or if so arbitrary as to indicate abuse of discretion and judgment. State v. Great Northern Ry. Co., 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201.

A statute which attempts to give to the court administrative or legislative powers is unconstitutional. State v. Great Northern Ry. Co., supra; Steenerson v. Great Northern Ry. Co., 69 Minn. 353, 375, 72 N. W. 713; State v. Brill, 100 Minn. 499, 111 N. W. 294, 639, 10 Ann. Cas. 425; Duluth v. Railroad & Warehouse Commission, 167 Minn. 311, 209 N. W. 10.

The order of the commission is prima facie valid, and an appellant has the burden of proving its invalidity. Section 4651, Mason's Minnesota Statutes 1927; State v. Great Northern Ry. Co., 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201; State v. Great Northern Ry. Co., 135 Minn. 19, 159 N. W. 1089; State v. Northern Pacific Ry. Co., 176 Minn. 501, 223 N. W. 915; City of St. Paul v. Great Northern Ry. Co., 178 Minn. 193, 226 N. W. 470.

It is obvious that, on an appeal from an order of the commission, the court exercises a judicial function only, and that the question before the court is whether the commission's order is lawful and reasonable.

In Weston v. City Council of Charleston, 2 Pet. 449, 464, 7 L. Ed. 481, Chief Justice Marshall gives the following definition of a suit: "The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

In Boom Co. v. Patterson, 98 U. S. 403, 407, 25 L. Ed. 206, Mr. Justice Field says: "And in Gaines v. Fuentes (92 U. S. 20 [23 L. Ed. 524], it was held that a controversy between citizens is involved in a suit whenever any property or claim of the parties, capable of pecuniary estimation, is the subject of litigation and is presented by the pleadings for judicial determination."

That this proceeding became a civil suit when the city took its appeal is indicated by the following cases: Commissioners v. St. Louis Southwestern Ry. Co., 257 U. S. 547, 42 S. Ct. 250, 66 L. Ed. 364; In re Water Right of Utah Construction Co. (D. C.) 30 F.(2d) 436; In re Chicago, R. I. & P. Ry. Co. (D. C.) 28 F.(2d) 56; Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Pacific Removal Cases, 115 U. S. 1, 5 S. Ct. 1113, 29 L. Ed. 319; Smith v. Douglas County (C. C. A.) 254 F. 244; Chicago, M. & St. P. Ry. Co. v. Spencer (D. C.) 283 F. 824; Chicago, M. & St. P. Ry. Co. v. Drainage Dist. (D. C.) 253 F. 491; State of Washington ex rel. Markham v. Seattle & R. V. Ry. Co. (D. C.) 2 F.(2d) 264; State of Washington ex rel. Markham v. Seattle & R. V. Ry. Co. (D. C.) 1 F.(2d) 605; State of Washington ex rel. Seattle v. Pacific Tel. & Tel. Co. (D. C.) 1 F.(2d) 327; In re The Jarnecke Ditch (C. C.) 69 F. 161; Weston v. Charleston, 2 Pet. 449, 7 L. Ed. 481; Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524.

Since this proceeding is a civil suit, it is removable under section 71, title 28, US CA, which, so far as we are concerned, provides that any suit of a civil nature, at law or in equity, of which the District Courts

of the United States are given jurisdiction, in any state court, may be removed into the District Court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state.

The more difficult question to determine is whether the city is plaintiff and the railroads defendants.

"In a determination of the jurisdiction of the national courts, and the right to remove causes of action to them, indispensable parties only should be considered, because all other parties may be dismissed and disregarded if their presence would oust or restrict the jurisdiction or the right. Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 S. Ct. 807, 47 L. Ed. 1122; Bacon v. Rives, 106 U. S. 99, 104, 1 S. Ct. 3, 27 L. Ed. 69; Wormley v. Wormley, 8 Wheat. 421, 451, 5 L. Ed. 651; Wood v. Davis, 18 How. 467, 475, 15 L. Ed. 460; Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 F. 124, 126, 27 C. C. A. 73, 75.

"The positions assigned to parties in a suit by the pleader are immaterial in determining the removability of a cause. It is the duty of the national court to ascertain the real matter in dispute, to arrange the parties on opposite sides of it according to the facts and their respective interests, and then to determine whether or not a controversy exists between citizens of different states which invokes the jurisdiction of that court. Removal Cases, 100 U. S. 457, 460, 25 L. Ed. 593; Pacific Ry. Co. v. Ketchum, 101 U. S. 289, 298, 25 L. Ed. 932; Harter v. Kernochan, 103 U. S. 562, 566, 567, 26 L. Ed. 411; Evers v. Watson, 156 U. S. 527, 532, 15 S. Ct. 430, 39 L. Ed. 520; Black's Dillon on Removal of Causes, § 90." Boatmen's Bank v. Fritzlen (C. C. A.) 135 F. 650, 658.

That the actual controversy here is between the city and the railroads is reasonably clear. The city has continuously asserted its right to have the separation of grades provided for in the ordinance of 1921, and, except for the passage of chapter 336, which gave the commission jurisdiction of the matter, it would have enforced that ordinance unless enjoined. The city was not the aggressor in the proceedings before the Railroad and Warehouse Commission. It did not initiate those proceedings, but objected to the jurisdiction of the commission to order a separation of grades. It did present its evidence to the commission and its contentions that the separation should be made by the ordinance method. When the city appealed, it initiated a civil suit, and questioned the validity and reasonableness of the order of the commission, and required the railroads to defend that order. It sought to take away the rights which the order would have given them if left undisturbed. The city assumed the burden of establishing the invalidity of the order. The mere fact that a party appeals from the order of an administrative and nonjudicial body does not constitute that party a plaintiff.

In the case of Mason City & Ft. D. R. R. Co. v. Boynton, 204 U. S. 570, 27 S. Ct. 321, 51 L. Ed. 629, which involved a condemnation proceeding, Boynton, who had appealed from the award, was nominally the plaintiff. The Supreme Court held that he was, as a matter of fact, the defendant. On page 579 of 204 U. S., 27 S. Ct. 321, 323, the court said: "But this court must construe the act of Congress regarding removal. And it is obvious that the word 'defendant' as there used is directed toward more important matters than the burden of proof or the right to open and close. It is quite conceivable that a state enactment might reverse the names which, for the purposes of removal, this court might think the proper ones to be applied. In condemnation proceedings the words 'plaintiff' and 'defendant' can be used only in an uncommon and liberal sense. The plaintiff complains of nothing. The defendant denies no past or threatened wrong. Both parties are actors; one to acquire title, the other to get as large pay as he can. * * * The intent of the railroad to get the land is the mainspring of the proceedings from beginning to end, and the persistence of that intent is the condition of their effect."

In condemnation proceedings, it is, of course, apparent that before appeal and after appeal the entire purpose is to acquire the lands sought to be condemned. The owners are on the defensive. In this proceeding the thing which is ultimately sought is the separation of grades. The city seeks to have them separated in a certain way. It is obviously the party most interested in securing the separation.

It is not a fact that the railroads were attempting to force a separation of grades upon the city. They complain of nothing, and would be satisfied, no doubt, to leave the grades of their tracks and the city streets as they now are. The city complains of the grade crossings, and complains of the meth-

od of grade separation advocated by the railroads and now ordered by the commission. Before the commission, the city and the railroads were on a parity. Each admitted the desirability of a separation of the grades, but there was a controversy between them as to the method. Had the Legislature of Minnesota, instead of giving jurisdiction to the commission to pass upon the question of grade separation, undertaken to fix the method by statute, and had the city then sought to enjoin the railroads from complying with the statute on the ground that it was invalid, the city clearly would have been the plaintiff and the railroads the defendants. In principle, the relation of the parties to each other in this proceeding would appear to be analogous. The city attacks an order made by the commission under authority of a legislative act. As a practical matter, the intent of the city to secure the separation of the grades by the method which it has at all times contended for is the mainspring of this proceeding, and, when it took its appeal from the order of the commission, and thereby instituted a civil suit, it put the railroads in a position which entitled them to remove that suit to this court. Having jurisdiction of this proceeding, this court is bound to retain it. It is without power to remand the case. Even if the question of removability is doubtful, it is the duty of the court to deny the motion to remand. Boatmen's Bank v. Fritzlen, supra.

The motion to remand is denied.